By the Court, Bronson, J.
In civil cases, When the court adjourns for refreshment in the progress of a trial, *208 and before the canse is finally committed to the jury, it is now the usual course to allow the jurors to separate and return to their families or boarding houses for food and rest; and if one of them drink a glass of spirituous liquor while so absent from court, I cannot think it sufficient ground for setting aside the verdict, unless there is some reason to suppose that the juror drank to excess, or at the expense or on the invitation of one of the parties. I agree that it would be well that all men should abstain from the use of intoxicating drinks; but until that sentiment becomes nearly or quite universal, I think it should not be imposed as a law upon a juror in those cases where he is permitted for a night or an hour to go wheresoever he pleases without being attended by an officer. To adopt the language of Parke, J. in Everett v. Youells, (4 Barn. & Adol. 681,) where food was secretly delivered to the foreman, after the jury had retired to consider of their verdict, “ it would be a fearful thing if verdicts could be set aside on such grounds as this.” We might expect to see many verdicts overturned.
This case is distinguishable from those oh which the plaintiff relies. The People v. Douglass, (4 Cowen, 26,) was a capital case, and the jurors were only allowed to leave the court room under the charge of two sworn constables, with the direction of the court to keep together and return speedily. Contrary to their duty, two of the jurors separated from their fellows and the officers, and while so separated, ate, drank spirituous liquor, and conversed with by-standers on the subject of the trial. The jurors knew that they were disregarding the instructions of the court, and doing that which the officers could not rightfully permit to be done ; and for this misbehavior, the verdict was set aside. So, too, in Brant v. Fowler, (7 Cowen, 562,) the jurors were hot allowed to separate, but were permitted to leave the court room, accompanied by an officer. One of the number separated from the officer and drank brandy; and for that cause, the verdict was set aside. This case certainly goes very far; for it appears *209 that the juror did not intend to disregard his duty. He mistook the charge of the judge, and only drank a small quantity of brandy as a remedy for disease. But still the jurors were not, as in this case, at liberty to go where they pleased; nor had they the right to take either food or drink without the permission óf the court. It should also be added, that the judge had delivered his charge, and the trial, as to every thing but the verdict, was at an end, before the jurors were permitted to retire.
I may notice here, that in The State, v. Prescott, (7 New-Hamp. R. 287,) the superior court of New-Hampshire did not seem prepared to follow the two decisions I have mentioned, even in a capital case. Nor were they followed in Commonwealth v. Roby, (12 Pick. 510, 516, 520,) which was also a capital case.
In Kellogg v. Wilder, (15 John. R. 455,) although the court spoke with just severity of the misconduct of the justice in permitting the parties to treat the jury, yet the judgment seems to have been reversed on the ground that “ the verdict was decidedly wrong upon the evidence.” In Rose v. Smith, (4 Cowen, 17,) spirituous liquor was freely circulated among the jury on the trial, although the plaintiff in error objected to it; and one of the jurors was “ disguised with liquor”—in other Words, he was rendered incapable by intoxication for the proper discharge of his duty. That was a plain case for reversing the judgment of the justice.
I find nothing in the earlier decisions to disturb this verdict. There is an anonymous case in Dyer, (37, pl. 45,) where the jury ate and drank after they had agreed on their verdict, but before it was delivered in court; and the jurors were fined forty pence each, but judgment was rendered upon the verdict. In another anonymous case in Dyer, (218, pl. 4,) the jury, after the charge, returned and said they were all agreed except one, and he had eaten a pear and drank a draught of ale, wherefore he would not agree. On being again sent out, they found a verdict for the plaintiff, on which judgment was rendered; but the offending *210 juror, or the offenders, as the report states, were committed, and found surety afterwards for their fines; and as to the bailiff who attended the jury, curia advisare vult. In The Duke of Richmond v. Wise, (1 Vent. 124,) the jury drank wine while they were deliberating; and further, “ after they had given up their privy verdict, they were treated at the tavern by the plaintiff’s solicitor, before their affirmance of it in courtand for “ these misdemeanors in the jury,” a motion was made to set aside the verdict which they found for the plaintiff. But the motion was denied. As to the drinking wine, the judges were all agreed, “ that if the jury eat or drink at the charge of the party for whom they find their verdict, it disannuls their verdict; but here it doth not appear that the wine they drank was had by order of the plaintiff, or any agent for him.” And as to the treating by the • plaintiff between the privy and the public verdict, the. court held, that it did not avoid the finding; though it would have heen otherwise, “ if the defendant had treated them, and they had changed their verdict.” In the King v. Burdett, (12 Mod. 111,) it is said, • that if the jury eat and drink at the charge of the party for whom the verdict is found, it avoids it; but if at their own charge, they are only fineable. This case is also reported in 2 Salk. 645, where Holt, C. J. said, that if a jury eat (and there was formerly no difference as to this question between eating and drinking,) at their own charge,, it is fineable, but the verdict shall stand; otherwise, if at the charge of one of the parties, and the verdict is found for him. (1 Ld. Raym. 148, S. C.) In Harebottle v. Placock, (Cro. Jac. 21,) it was certified upon the postea, that the jurors had taken meat and drink before giving their verdict, but it did not appear at whose charge; and the,court said, “that would make a great difference, for if it were at the cost of the party for whom they gave their verdict, it will make the verdict void; but if it were at their own cost, it is only fineable, and the verdict good.” The same doctrine is laid down jn Coke Litt. 227, B; Trials per pais, 248 ; 21 Vin. Ab. 448, tit Trial, (G. g.)
*211 The case of Brant v. Fowler cannot, I think, be supported. The mere fact that some of the jurors, “ of their own head,” drink spirituous liquor in the course of a cause, if, as was admitted in that case, there “ has been no mischief,” cannot be a sufficient ground for setting aside the verdict. There is no authority, ancient or modern, so far as I have observed, which goes far eqpugh to uphold such a doctrine. The case of The People v. Douglass must be considered as having turned upon all the grounds of irregularity which were urged against the verdict, and not on the single objection that some of the jurors drank spirituous liquor. In addition to the fact of drinking, two of the jurors, contrary to their duty, separated from their fellows, and one of them conversed with the by-standers on the subject of the trial.
It is worthy of remark, that in the two cases which have just been noticed, not a single authority, or even dictum, was referred to for the purpose of showing that the drinking of the jurors at their own expense, where there is no reason to suppose there has been any excess, is, in itself, a sufficieñt ground for disturbing the verdict. The earlier cases in this court had gone upon the principle, that notwithstanding a trifling irregularity on the part of the jury, the verdict should stand, unless there was some reason to suppose that the party moving might have suffered by the misconduct of which he complained. (Smith v. Thompson, 1 Cowen, 221. Horton v. Horton, 2 id. 589. Ex parte Hill, 3 id. 355.) This rule is in accordance with the ancient cases to which I have already referred.
When in the course of the trial, a juror has in any way come under the influence of the party who afterwards has the- verdict, or there is reason to suspect that he has drank so much, at his own expense, as to unfit him for the proper discharge of his duty, or where he has so grossly misbehaved himself in any other respect as to show that he had no just sense of the responsibility of his station, the verdict ought not to stand. But every irregularity which would subject the juror to censure, whether in drinking *212 spirituous liquor, separating from his fellows, or the like, should not overturn the verdict, unless there be some reason to suspect that the irregularity may have had an influence on the final result.
There is no pretence in this casé, that the juror either drank to excess, or at the expense of the defendant,, and we think the verdict should not be disturbed.
Motion denied.(a)

 A similar decision was made immediately afterward, in Dunning v. Humphrey Clark. There the defendant moved to set aside the inquisition 'found by the jury, on a writ of inquiry of damages,- upon the ground that several of the jurors summoned by the sheriff drank spirituous liquor at the bar of the tavern where they were assembled, before they retired to deliberate upon their verdict. There was no charge that any of the jurors drank to excess, or that the plaintiff knew aught of the matter.
By the Court, Bronson, J. This case depends on the same principle as that of Wilson v. Abrahams, just decided, and the motion to set aside the inquisition must • be denied. Rule accordingly.